Jeffrey SCHWIGEL and Classic Tool & Machine Company, Plaintiffs-Respondents,

v.

David J. KOHLMANN, Jane Kohlmann, and Kohlmann Tool & Design, Inc., Defendants-Appellants,†

Port Washington State Bank and Middle West Manufacturing, Inc., Intervenors.

Court of Appeals

*No. 04–0588. Submitted on briefs January 7, 2005.—Decided February 23, 2005.*

2005 WI App 44

(Also reported in 694 N.W.2d 467.)

† Petition to review denied 7-28-2005.

196

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Benjamin J. Harris* of *Harris & Associates, S.C.*, Milwaukee and *Paul Piaskoski*, of counsel, of *Paul Piaskoski, LLC*, Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Daniel W. Stevens* and *Nicholas Zales* of *Stevens & Kroening, LLC*, Brookfield.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J.   David and Jane Kohlmann and Kohlmann Tool & Design, Inc. (Kohlmann) appeal from a judgment on a jury verdict awarding a total of $412,000 in compensatory and punitive damages to Jeffrey Schwigel and Classic Tool & Machine Company (Schwigel). Kohlmann contends that the trial court erred when it failed to differentiate between Schwigel's contract claim and his conversion claim when instructing the jury on punitive damages. Kohlmann further contends that the jury's punitive damages award was grossly excessive and a violation of due process principles. Finally, Kohlmann argues that there was no credible evidence to support the jury's compensatory damages award. We agree that the trial court erred when it failed to provide a jury instruction on the difference between the contract claim and the conversion claim when awarding punitive damages; nonetheless, we conclude that the error was harmless. We disagree with Kohlmann's remaining contentions and affirm the judgment of the trial court.

## BACKGROUND

¶ 2.   This appeal arises from a retrial pursuant to our remand order in *Schwigel v. Kohlmann*, 2002 WI App 121, 254 Wis. 2d 830, 647 N.W.2d 362. There, Schwigel brought five claims against Kohlmann: breach of contract, negligent misrepresentation, unjust enrichment, promissory estoppel, and conversion of equipment. *Id.*, ¶ 8. The jury awarded Schwigel compensa-

tory damages of $250,000 on the contract, misrepresentation and unjust enrichment claims, $12,000 on the conversion claim, and $300,000 in punitive damages.[1] *Id.*, ¶ 9. The historical facts of the current appeal were set forth in our previous opinion, and we provide an abbreviated rendition here for context.

¶ 3.  In 1998, Kohlmann was operating his tool and die business out of a shop he owned in Cedarburg, Wisconsin. After Kohlmann and Schwigel became acquainted, Kohlmann asked Schwigel to move his toolmaking business to Kohlmann's shop. Schwigel declined. During October 1999, Kohlmann told Schwigel that he had located a prospective and lucrative motor shaft production job. Since Schwigel had the expertise and machinery to handle the job, Kohlmann again asked Schwigel to relocate to his shop and to take over the prospective job.

¶ 4.  The talks eventually produced a verbal agreement whereby Schwigel would share space in Kohlmann's shop at the cost of $700 per month. The motor shaft production job was a substantial factor in Schwigel's decision to relocate. Schwigel moved into Kohlmann's shop on or about November 3, 1999. Because of limited space, Schwigel stored some of his equipment in another building owned by Jack Dunfee, a business associate of Kohlmann. Dunfee did not charge Kohlmann for storing Schwigel's equipment, and Kohlmann had the only key to the storage area.

¶ 5.  On November 19, 1999, Kohlmann received a purchase order from the manufacturer for the immedi-

---

[1] The jury found in favor of Schwigel on all claims except promissory estoppel. *Schwigel v. Kohlmann*, 2002 WI App 121, ¶ 9, 254 Wis. 2d 830, 647 N.W.2d 362.

ate production of the shafts. After receiving the purchase order, Schwigel and Kohlmann went to Illinois to look into purchasing a machine to mass produce the shaft job. On December 2, 1999, Schwigel received approval from his bank to purchase the mass-production machine. However, two days later, Kohlmann told Schwigel that he was going to buy the machine for himself in order to produce the shafts and keep the job for himself.

¶ 6. Thereafter, the relationship between Schwigel and Kohlmann deteriorated, and on December 28, 1999, Kohlmann told Schwigel to leave. Without notice to Schwigel, Kohlmann changed the locks on the shop, prohibiting Schwigel from gaining access to his equipment and performing work for his customers. After numerous attempts to get access to the shop, Schwigel contacted the Cedarburg police to help him get his equipment back. On January 18 and 19, 2000, the police supervised as Schwigel moved his equipment out of Kohlmann's shop. At that time, Schwigel also asked to remove his other equipment that had been stored in the building owned by Dunfee. Neither Dunfee nor Kohlmann would allow Schwigel access to the storage building, and the police told Schwigel that if he attempted to access the building he would be charged with trespassing.

¶ 7. By July 2000, Schwigel had lost all of his customers and he was out of business. Four months later, in November 2000, Schwigel received a phone call from Dunfee who told him to come and get his equipment from the storage building. When Schwigel went to remove his equipment from the storage building, he found that certain items were missing.

¶ 8. On appeal, we affirmed Kohlmann's liability on the breach of contract, negligent misrepresentation,

and unjust enrichment claims, but reversed the compensatory and punitive damages awards. *Id.*, ¶ 2.[2] We remanded the matter for a new trial on compensatory damages associated with the three claims and on the issue of punitive damages. *Id.*, ¶ 26. Subsequently, Schwigel chose to pursue damages for breach of contract and punitive damages.[3] Following retrial, the jury awarded Schwigel $37,000 in compensatory damages for the breach of contract and $375,000 in punitive damages. The trial court upheld the verdict and entered judgment accordingly. Kohlmann appeals.

## DISCUSSION

### *Jury Instructions*

¶ 9.   Kohlmann first contends that the trial court erred when it failed to instruct the jury that punitive damages cannot be awarded on the breach of contract claim. A trial court has broad discretion in deciding whether to give a particular jury instruction, and the court must exercise its discretion to "fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence." *State v. Coleman*, 206 Wis. 2d 199, 212, 556 N.W.2d 701 (1996) (citation omitted). However, we will independently review whether a jury instruction is

[2] Kohlmann did not challenge that portion of the judgment associated with the conversion claim. *Schwigel*, 254 Wis. 2d 830, ¶ 1.

[3] Schwigel explains that he elected to limit the issues on remand because of a concern about "raising new appellate issues regarding the differing measure of damages" on the breach of contract, negligent misrepresentation, and unjust enrichment claims.

appropriate under the specific facts of a given case. *State v. Groth*, 2002 WI App 299, ¶ 8, 258 Wis. 2d 889, 655 N.W.2d 163, *review denied*, 2003 WI 32, 260 Wis. 2d 752, 661 N.W.2d 100 (No. 01–3000–CR).

¶ 10.   The scope of the new trial below was limited to damages. The special verdict contained eighteen questions, sixteen of which were answered by the trial court.[4] The jury was required to make two findings:  (1) what sum of money would compensate Schwigel for the breach of contract, and (2) what sum of money should be awarded as punitive damages. In Wisconsin, punitive damages are not available as a remedy for breach of contract. *Autumn Grove Joint Venture v. Rachlin*, 138 Wis. 2d 273, 279, 405 N.W.2d 759 (Ct. App. 1987). Neither the jury instructions nor the verdict form itself advised the jury that punitive damages are not to be awarded for the breach of contract and must be determined based only upon Kohlmann's conduct in relation to the conversion claim. By such omission, the trial court failed to fully and fairly inform the jury of the rules of law applicable to the case.

¶ 11.   Although the trial court did err in its failure to fully instruct the jury, we conclude that the error was harmless. The standard for harmless error is the same for civil and criminal cases. *Town of Geneva v. Tills*, 129 Wis. 2d 167, 184–85, 384 N.W.2d 701 (1986). The test is whether there is a reasonable possibility that the error contributed to the outcome of the action or proceeding

---

[4] The special verdict included sixteen questions that were answered by the trial court on the basis of the original jury verdict and our remand directive in *Schwigel*.

at issue. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). A reasonable possibility of a different outcome is a possibility sufficient to "undermine confidence in the outcome." *Id.* at 545.

¶ 12.   Schwigel argues that the conduct relating to the breach of contract provided the historical context for the conversion claim and the punitive damages. The trial court shared this view, stating that "all matters of fact relevant to consideration of all aspects of damages are clearly relevant to the jury's consideration of punitive damages" and therefore the jurors are "entitled to listen to [the negligent misrepresentation and conversion findings to] determine what they feel would be an appropriate punitive damage award if they find that the conduct on the part of the defendants was outrageous." We agree that the jury heard and considered the same evidence of outrageous conduct that would have been presented had the breach of contract compensation issue been severed and tried independently.[5]

¶ 13.   In our remand directive to the trial court, we stated that "[s]ince the purpose of punitive damages is to punish, *see* WIS JI—CIVIL 1707, it follows that the jury determining punitive damages must be apprised of the offending conduct." *Schwigel*, 254 Wis. 2d 830, ¶ 20. We did not direct that Kohlmann's outrageous conduct be presented to the jury in a contextual vacuum. The facts of this case demonstrate that the promised contract, which is the subject of the claim for breach, set in motion a series of events that led to Kohlmann's conversion of Schwigel's equipment.

---

[5] Prior to the retrial, Kohlmann moved to sever the punitive damages claim from the compensatory damages claim. The trial court denied that motion. Kohlmann does not contest the court's ruling on appeal.

¶ 14. After considering postverdict motions, the trial court observed that "even if the only premise upon which the jury could return [a] punitive damage award in this case was the conversion damages," Kohlmann's malicious conduct "insulted" the jury and as a result the jury felt that its punitive damages award was necessary to deter Kohlmann from engaging in such conduct in the future. The trial court was convinced that Kohlmann's conduct relating to the conversion claim was sufficiently outrageous to support the jury's punitive damages award.

¶ 15. Our review of the record confirms the trial court's determination. Kohlmann changed the locks on the building and prevented Schwigel from accessing his machinery and customer blueprints. Kohlmann later attempted to charge Schwigel for the cost of changing the locks. Schwigel finally gained access to the building and found that Kohlmann had thrown his inspection equipment in a pile on the floor. When Schwigel returned with his family to remove his equipment from Kohlmann's building, Kohlmann was abusive, threatening, and throwing things. Kohlmann called the Schwigels "city trash" and made inflammatory statements about Schwigel's mother-in-law.

¶ 16. Schwigel subsequently tried to recover his equipment from Dunfee's storage facility, but Kohlmann held the only key. Schwigel wrote to Kohlmann, requesting access to the stored equipment. Eventually, eleven months later, Dunfee called Schwigel and told him to pick up his equipment or it would be scrapped. When Dunfee opened the door to the storage facility, Schwigel saw that his lathe, lathe accessories, and tooling cabinets were gone. Later, Kohlmann taunted Schwigel about the missing equipment. Schwigel stated

that the truth would eventually come out, but Kohlmann responded, "[T]hey'll find you with your head caved in long before that."

¶ 17.  Although Kohlmann correctly argues that an additional jury instruction should have been given, our confidence in the verdict is not undermined. There is no reasonable possibility of a different outcome and therefore the error was harmless. *See Dyess,* 124 Wis. 2d at 545.

### *Excessiveness of Punitive Damages*

¶ 18.  Kohlmann next argues that the $375,000 punitive damages award is grossly excessive and violates due process. The award of punitive damages in a particular case is within the discretion of the jury. *Trinity Evangelical Lutheran Church and School-Freistadt v. Tower Ins. Co.,* 2003 WI 46, ¶ 46, 261 Wis. 2d 333, 661 N.W.2d 789, *cert. denied,* 540 U.S. 1074 (2003). When reviewing a circuit court's determination of the constitutionality of a punitive damages award, however, we employ a de novo standard of review. *Id.,* ¶¶ 47–48.

¶ 19.  "[T]he purpose of punitive damages is to punish the wrongdoer, and to deter the wrongdoer and others from similar conduct . . . ." *Id.,* ¶ 50 (citation omitted). To determine whether a punitive damages award is excessive, we consider the following:  the grievousness of the acts, the degree of malicious intent, the relationship between the punitive damages and the compensatory damages, the potential damage that might have been caused by the acts, the ratio of the

award to civil or criminal penalties that could be imposed for comparable misconduct, and the wealth of the wrongdoer.[6] *Id.*, ¶ 53.

¶ 20. Kohlmann concedes that he acted with malice in converting Schwigel's property, but argues that this is insufficient to support the jury's punitive damages award. Specifically, Kohlmann contends that Schwigel suffered no physical harm, his health and safety were not compromised, he was not financially vulnerable, and there was only one incident of conversion; therefore, the jury's award is excessive. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418–19 (2003) (explaining the factors used to analyze the degree of reprehensibility of a defendant's conduct). We reject Kohlmann's assessment. Some wrongs are more "blameworthy" and here Kohlmann's intentional conversion of the property "reveals an indifference and a reckless disregard for the law, and for the rights of others." *See Jacque v. Steenberg Homes, Inc.*, 209 Wis. 2d 605, 628, 563 N.W.2d 154 (1997). Moreover, the evidence in this case abundantly supports the first jury's determination that Kohlmann acted maliciously or in intentional disregard of Schwigel's rights. *See Schwigel*, 254 Wis. 2d 830, ¶ 20. The amount of punitive damages awarded by the second jury reflects the reprehensible nature of Kohlmann's conduct.

---

[6] The Wisconsin test for excessive punitive damages is nearly identical to that used by the United States Supreme Court, which requires a reviewing court to consider: (1) the degree of reprehensibility of the defendant's conduct, (2) the disparity between the punitive damages award and the actual or potential harm suffered by the plaintiff, and (3) the difference between the punitive damages award and the criminal penalties authorized or imposed in comparable cases. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418–19 (2003).

¶ 21.    Kohlmann further argues that although no set ratio between punitive and compensatory damages exists, a ratio of more than four to one may not pass constitutional muster under the due process protections of the Fourteenth Amendment. Here, the ratio between the $375,000 punitive damages award and $12,000 compensation for conversion is just over thirty to one. Nonetheless, courts have expressly rejected the use of a fixed multiplier to calculate punitive damages. *See, e.g., Jacque,* 209 Wis. 2d at 629; *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 582 (1996). A ratio, therefore, is but one factor in assessing the reasonableness of the award. *Jacque,* 209 Wis. 2d at 629.

¶ 22.    The United States Supreme Court has observed that larger punitive damages awards may be constitutional where "a particularly egregious act has resulted in only a small amount of economic damages." *BMW,* 517 U.S. at 582. In the context presented here, Kohlmann's profoundly egregious conduct was disproportionate to the relatively small amount of economic loss incurred by Schwigel. Accordingly, a comparison of the punitive damages award to the compensatory damages award does not defeat the jury's verdict.

¶ 23.    Kohlmann also argues that there must be some relationship between the punitive damages and the penalty that would have been available in a comparable criminal charge. *See Trinity,* 261 Wis. 2d 333, ¶ 66. Here, the comparable criminal charge is found in Wis. Stat. § 943.20(3)(c) (2003–04),[7] which states that misappropriation of property valued at more than

_____

[7] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

$10,000 is a Class G felony. WISCONSIN STAT. § 939.50(3)(g) imposes a fine of up to $25,000 for a Class G felony. Because punitive damages are assessed for punishment, it is relevant to consider the criminal fines associated with similar conduct. *See Jacque*, 209 Wis. 2d at 630.

¶ 24. Like our supreme court in *Jacque*, we conclude that the conduct exhibited here "could scarcely have been contemplated by the legislature when it enacted [these] statute[s] . . . ." *Id.* The misappropriation statute provides a penalty for anyone who "[i]ntentionally takes and carries away, uses . . . or retains possession of movable property of another" without consent. WIS. STAT. § 943.20(1)(a). In contrast, Kohlmann became verbally abusive toward Schwigel and his family, threw objects, mistreated Schwigel's property, delayed several months before allowing access to a portion of the property, and threatened that Schwigel would have his "head caved in." We see no reason why the legislatively imposed $25,000 fine for misappropriation would deter such outrageous conduct by Kohlmann in the future. Consequently, the punitive damages award need not mirror the comparable criminal penalty in this case.

*Credible Evidence Supporting Compensatory Damages*

■

¶ 25. Kohlmann finally contends that the jury's award of $37,000 in compensatory damages for breach of contract has no credible support in the record. Our review of a jury's verdict is narrow, and we will sustain it if there is any credible evidence to support it. *Betterman v. Fleming Cos.*, 2004 WI App 44, ¶ 15, 271 Wis. 2d 193, 677 N.W.2d 673. It is the jury's role, not ours, to balance the credibility of witnesses and weigh the

evidence. *Id.* Our standard of review here is even more stringent because the trial court approved the verdict by denying Kohlmann's postverdict motions. *See id.,* ¶ 16. We afford special deference to a jury's verdict where the trial court has approved the jury's findings. *Id.* Accordingly, we will not overturn the jury's verdict unless there has been "such a complete failure of proof that the verdict must be based on speculation." *Id.* (citation omitted).

¶ 26.   Our review of the record reveals that documentary evidence on the issue of damages was presented to the jury by both parties. Kohlmann contends that credible evidence exists to support "[a]t best . . . $7,500 to $8,900 in compensatory damages naturally flowing from Kohlmann's breach of contract." This represents the moving expenses incurred by Schwigel when he acted upon the agreement to lease industrial space from Kohlmann.

¶ 27.   At trial, Schwigel argued that his personal net worth declined by approximately $387,000 due to Kohlmann. He further argued that he lost income of $50,000 per year for two years, bringing his compensatory claim to about $487,000 plus all reasonable expenses resulting from the breach. According to Schwigel, he had $37,000 "cash in the bank" one month before he met Kohlmann. Schwigel presented financial statements, purchase orders, equipment lists, and other documentation to support his demand for damages.

¶ 28.   We observe that Kohlmann successfully challenged some of Schwigel's calculations.[8] Nonetheless, on appeal it is our responsibility to search the

---

[8] For example, Schwigel originally testified that his moving expenses were approximately $20,000; however, on cross-examination he conceded that he incurred moving expenses of only $8,900.

record for evidence to support the jury's verdict, not for evidence to support a verdict that the jury could have reached but did not. *Morden v. Continental AG*, 2000 WI 51, ¶ 39, 235 Wis. 2d 325, 611 N.W.2d 659. If the evidence gives rise to more than one reasonable determination, as it does here, we must accept the inference reached by the jury. *See id.*

## CONCLUSION

¶ 29. We conclude that the trial court erred when it did not instruct the jury that punitive damages may not be awarded on a breach of contract claim. We hold, however, that under the circumstances of this case the error was harmless because it does not undermine our confidence in the jury's verdict. We further conclude that the amount of punitive damages is not grossly excessive and comports with the due process requirements of the Fourteenth Amendment. Finally, we conclude that sufficient credible evidence exists to support the jury's compensatory damages award for breach of contract.

*By the Court.*—Judgment affirmed.