LeRoy M. STRENKE and Juanita M. Strenke, Plaintiffs-Respondents,

v.

Levi HOGNER and NAU Country Insurance Company, Defendants-Appellants,†

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant.

Court of Appeals

*No. 2003AP2527. Submitted on briefs April 4, 2005. —Decided August 2, 2005.*

2005 WI App 194

(Also reported in 704 N.W.2d 309.)

† Petition to review denied 11-11-05.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Karen J. Kingsley* of *Kingsley Law Office, P.A.* of St. Paul, Minnesota.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Owen R. Williams* of *Owen R. Williams Trial Lawyers* of Amery, and of counsel: *Lynn R. Laufenberg* of *Laufenberg & Hoefle, S.C.* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Levi Hogner and his insurer, NAU Country Insurance Company, appeal that portion of a judgment awarding punitive damages of $225,000 to LeRoy Strenke for a car accident that occurred when Hogner was driving while drunk. Hogner also appeals the trial court's denial of his motions for remittitur and a new trial. Hogner argues the award is so excessive it violates his due process rights under the United States

and Wisconsin Constitutions because there was no rational relation between the amount of compensatory damages and the amount of punitive damages and no reasonable relation between the punitive award and the civil and criminal penalties that could have been imposed. Hogner argues alternatively that because the punitive damage award was based on passion or prejudice, the court should have ordered a new trial or reduced the award to make it reasonable. Because we conclude the award, though large, is not grossly excessive and therefore not unconstitutional, we reject all of Hogner's arguments and affirm the judgment.

## Background

### *Factual History*

¶ 2.   According to Hogner's trial testimony, he began drinking beer at his home around 8 a.m. on October 16, 1998. At 2:30 p.m., after drinking at least twelve beers, he drove to a nearby tavern where he drank four to six more beers. He eventually testified that he believed he had consumed sixteen to eighteen twelve-ounce beers over the span of five hours.[1] Sometime after 4 p.m., he decided to drive to another tavern. He got in his car and headed north on Highway 48 near Cumberland, Wisconsin. Strenke was driving south on the same road. As their cars approached the intersection of Highway 48 and Golf Course Road, Hogner turned left into the path of Strenke's car, causing a crash. Strenke injured his back in the collision.

¶ 3.   Hogner's blood was drawn at the scene of the accident; his blood alcohol content later tested at .269%.

---

[1] Hogner, who weighed 400 pounds, also testified that he had never injured anyone previously while drinking and driving and did not intend to hurt anyone on the day of the accident.

138

Hogner pled no contest to operating a vehicle while intoxicated, fifth offense. He was sentenced to one year in jail, had his license revoked for thirty-six months, and paid fines of $3,041.

## Procedural History

¶ 4.   In May 2001, Strenke brought personal injury and punitive damage claims against Hogner and the case went to trial before a jury in May 2003. At the close of testimony, Hogner moved for a directed verdict, arguing that Strenke had not presented a prima facie case that he had acted maliciously or in intentional disregard of Strenke's rights.[2] The trial court denied the motion, agreeing there was no evidence of malice, but concluding the jury could find that Hogner had acted with intentional disregard. The jury was then asked whether Hogner "acted maliciously towards LeRoy Strenke or in intentional disregard" of Strenke's rights and what sum, if any, they would award in punitive damages. The jury answered the first question "yes." They answered the second question "$225,000"—although Strenke had been awarded $2,000 in compensatory damages and his attorney had requested only $25,000 in punitive damages.

¶ 5.   After the verdict, Hogner moved for remittitur or a new trial. The trial court orally denied both motions and entered judgment. Hogner then appealed.

¶ 6.   In response to Hogner's appeal, we certified three questions to the supreme court:

(1)   What proof is required for a plaintiff to recover

---

[2] The proceeding was bifurcated; most of the evidence discussed here was not introduced until after the jury had decided Hogner's liability and the amount of compensatory damages.

punitive damages under the phrase "in an intentional disregard of the rights of the plaintiff" as provided in WIS. STAT. § 895.85(3) (2001–2002)?

    i.   If *Wischer v. Mitsubishi Heavy Indus. Am., Inc.*, 2003 WI App 202, ¶ 40, 267 Wis. 2d 638, 673 N.W.2d 303, review granted (Wis. April 20, 2004) (Nos. 01–0724, 01–1031 & 01–2486) is correct, are there sufficient facts from which a jury could conclude Levi Hogner was aware his acts were "practically certain" to cause injury?

(2)    Must a defendant's conduct giving rise to punitive damages have been directed at the specific plaintiff seeking punitive damages?

(3)    If there was sufficient evidence to submit a punitive damages question to the jury, is the jury's punitive damage award excessive or in violation of Hogner's due process rights?

¶ 7.  On March 18, 2005, the supreme court concluded that "a person acts in an intentional disregard of the rights of the plaintiff if the person acts with a purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded."[3] *Strenke v. Hogner*, 2005 WI 25, ¶ 3, 279 Wis. 2d 52, 694 N.W.2d

---

[3] *Strenke* thus overrules *Wischer*, in which this court determined that "intentional disregard of the rights of the plaintiff" required unambiguous proof the defendant had a general intent to perform an act and either a specific intent to cause injury by that act or knowledge the act was practically certain to result in injury. *Wischer v. Mitsubishi Heavy Indus. Am., Inc.*, 2003 WI App 202, ¶ 40, 267 Wis. 2d 638, 673 N.W.2d 303, *rev'd,* 2005 WI 26, 279 Wis. 2d 4, 694 N.W.2d 320. Under *Strenke*, "intentional disregard" does not require an "intent to cause injury;" rather, it reconfirms the common law principle that punitive damages

296. The court also held that, under WIS. STAT. § 895.85 (2001–02), the conduct giving rise to punitive damages need not be directed at the specific plaintiff seeking punitive damages. *Id.*

¶ 8. The court agreed there was sufficient evidence to send the punitive damages question to the jury. *Id.*, ¶¶ 58, 63, 106. It was evenly divided,[4] however, on the question of whether the damage award violated Hogner's due process rights. *Id.*, ¶ 4. That question was remanded to us to be decided according to "the principles set forth in *Trinity Evangelical Luth. Ch. v. Tower Ins. Co.*, 2003 WI 46, 261 Wis. 2d 333, 661 N.W.2d 789." *Strenke*, 279 Wis. 2d 52, ¶ 4.

## Discussion

### *The United States Constitutional Standard*

¶ 9. The common-law method for determining punitive damages has long been recognized as constitutional. *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17–18 (1991). In the last decades, however, the United States Supreme Court has also recognized that particular punitive damage awards can offend constitutional principles and, more recently, has sought to clarify the framework through which trial courts and courts of appeal review those awards.

¶ 10. In 1996, the Court overturned an Alabama punitive damage award, holding that "the Due Process Clause of the Fourteenth Amendment prohibits a state

---

can be premised on conduct that is "a disregard of rights." *Strenke v. Hogner*, 2005 WI 25, ¶ 19, 279 Wis. 2d 52, 694 N.W.2d 296.

[4] Chief Justice Abrahamson and Justices Bradley and Roggensack would find the award constitutional; Justices Wilcox, Crooks, and Butler would not. Justice Prosser did not participate. *Strenke*, 279 Wis. 2d 52, ¶ 58.

from imposing a 'grossly excessive punishment' on a tortfeasor." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996). In that case, the trial court awarded a BMW buyer $4,000 in compensatory damages, for buying a car that had been sold to him as new despite the fact it had been repainted before sale, and $4,000,000 in punitive damages.[5] *Id.* at 565.

¶ 11.   *BMW* set out the current federal framework, now adopted by many state courts, for analyzing the constitutionality of punitive damage awards. Where states have a legitimate interest in punishment and deterrence, they can authorize the award of punitive damages and give jurors some latitude to determine what amount of damages would vindicate the state's legitimate interest in those areas. *Id.* at 568. Any inquiry into the constitutionality of punitive damages must thus begin by identifying the state interests the award serves. *Id.* The *BMW* majority agreed that states had a legitimate interest in prohibiting deceptive trade practices, but noted that individual states provided that protection in different ways. *Id.* at 569–70. Based on that principle, no single state could impose economic sanctions on violators of their laws with the intent of changing the tortfeasor's conduct in other states. *Id.* at 572.

¶ 12.   *BMW* linked grossly excessive awards with lack of notice, a critical nexus for due process violations.

---

[5] The Alabama Supreme Court reduced the punitive award to $2,000,000, disclaiming any reliance on acts that had occurred in other jurisdictions. While the United States Supreme Court agreed a state award could not be directed at deterring conduct outside the state's border, it found the reduced award still "grossly excessive." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996).

Whether an award was "grossly excessive" could be determined, *BMW* concluded, by examining three "guideposts:" the degree of reprehensibility of the conduct; the disparity between the harm or potential harm suffered by the plaintiff and the punitive damage award; and the difference between the remedy and other civil penalties imposed in comparable cases. *Id.* at 574–75.

¶ 13. The first factor was the most important— the degree of reprehensibility. *Id.* at 575. *BMW* held that recidivism increased reprehensibility, *id.* at 577, but observed that where the conduct in question skirted or evaded illegality, repetition did not have the same significance. *Id.* at 577–80. The second guidepost entailed comparing the award and the harm. The proper inquiry was "whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that has actually occurred." *Id.* at 581. *BMW* refused to link constitutionality to any bright line rule or fixed ratio. It specifically noted that "low awards of compensatory damages may properly support a higher ratio . . . if . . . a particularly egregious act has resulted in only a small amount of economic damages." *Id.* at 582. The third guidepost also required comparison. Weighing punitive damages against the civil penalties awarded in comparable cases reflected, the court reasoned, proper deference to the legislature's determination of appropriate sanctions. *Id.* at 583–84. In that context, *BMW* again stressed the problem of notice potentially created by multi-million dollar awards. *Id.* at 584.

¶ 14. In 2003, the Supreme Court revisited the punitive award question in another case involving an allegedly nation-wide scheme *to* refuse settlement in

cases where excess verdicts were likely to be reached. The court found that the punitive damage award, $145,000,000, in that case violated due process.[6] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 412 (2003).

¶ 15. *State Farm* reiterated the analytic framework set out in *BMW*, once more rejecting the idea that a state award can legitimately be based on the desire to deter a national pattern of behavior, particularly if that conduct is lawful in other states. *State Farm*, 538 U.S. at 420. Punitive damages also cannot be awarded, the court concluded, to punish conduct that has no relation to the harm suffered by the plaintiff in the case. *Id.* at 422–23.

¶ 16. But *State Farm* also clarified *BMW* in several respects,[7] most notably by identifying a list of factors critical to determining the degree of reprehensibility of conduct: (1) whether the harm caused was physical or economic; (2) whether the tortious conduct evinced a reckless indifference to health or safety of others; (3) whether the target was financially vulnerable; (4) whether the conduct was single and isolated or involved repeated actions; and (5) whether the harm was the result of intentional malice, trickery, deceit, or mere accident. *State Farm*, 538 U.S. at 419. Evidence of recidivism can make conduct more reprehensible, but that evidence must be connected to the particular harm done to the plaintiffs. *Id.* at 423.

---

[6] The compensatory damages were $1,000,000.

[7] Many courts have signaled that they see the Supreme Court's second "bite" at the question as one intended primarily to clarify *BMW*. *See, e.g., In re Exxon Valdez*, 296 F. Supp. 2d 1071, 1076 (D. Alaska 2004) ([*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)] "while bringing the *BMW* signposts into sharper focus, does not change the analysis.").

¶ 17. In its discussions of the second and third guideposts, *State Farm* reaffirmed the essential *BMW* principles. Although the majority expressed a suspicion of double-digit ratios, *State Farm* again concluded there was no strict mathematical ratio for constitutionality, and higher ratios might be acceptable where egregious acts led only to small compensatory damages.[8] *State Farm*, 538 U.S. at 425. The majority also concluded that a punitive damage award could be compared to criminal as well as civil penalties. Criminal penalties, it reasoned, demonstrated legislative disapproval of a particular behavior; however, such sanctions were less useful in determining the appropriateness of the amount of an award than civil penalties.[9] *Id.* at 428.

## The Wisconsin Standard

¶ 18. In the wake of *BMW* and *State Farm*, the Wisconsin supreme court concluded that all appellate review of punitive damages awards for "gross excessiveness" is de novo and upheld a $3,500,000 punitive damage award for bad faith refusal to backdate insurance coverage. *Trinity*, 261 Wis. 2d 333, ¶¶ 48, 70.

¶ 19. As employed in *Trinity*, the Wisconsin test for the constitutionality of punitive damage awards is

---

[8] Although the majority said "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," that remark is dicta and not, as the holding makes clear, a new single-digit rule. *State Farm*, 538 U.S. at 425.

[9] In both *BMW* and *State Farm*, the excessiveness of the awards reflects, at least in part, the court's determination that the awards violate a fundamental premise of state authority, that it can have a legitimate interest in punishment and deterrence only within its jurisdiction and that the conduct at issue, legal in many places, is simply insufficiently reprehensible.

virtually identical to the one developed in *BMW* and *State Farm*. *Trinity*, 261 Wis. 2d 333, ¶¶ 23, 48, 53. *Trinity* first identified the state's legitimate interest in punishment and deterrence, focusing on the message a substantial punitive damage award can send to other insurers, and then examined the *BMW* guideposts.[10] The court found Tower's conduct reprehensible because it was clearly prohibited by law and recidivist. *Trinity*, 261 Wis. 2d 333, ¶ 58, 59. It also concluded that, based on an estimate of potential damages, the award represented a "constitutionally acceptable" ratio of 7:1.[11] *Id.*, ¶ 65, 68. Finally, it recognized that Wisconsin had provided a criminal penalty, including a fine of up to $10,000, for violations of insurance statutes and rules. *Id.*, ¶ 68. But, noting *State Farm*'s position that a criminal penalty has "less utility" in determining whether a punitive award is excessive, *Trinity* did not find that disparity significant enough to alter the constitutional analysis.

■

¶ 20.  The question before us now is whether, under the *BMW-State Farm-Trinity* standard, the $225,000 punitive damage award in this case is "grossly excessive." We conclude it is not.

¶ 21.  *Strenke* is clearly distinguishable from *BMW* and *State Farm*. The state's interest in punishing and deterring drunk driving within its own jurisdiction is powerful and well-established. "Drunk driving is a

---

[10] Unlike some jurisdictions, Wisconsin continues to support the message-sending function of punitive damage awards. *See, e.g., Trinity Evangelical Luth. Ch. v. Tower Ins. Co.*, 2003 WI 46, ¶ 50, 261 Wis. 2d 333, 661 N.W.2d 789.

[11] If *Trinty* had considered only out-of-pocket costs, however, the ratio would have been considerably higher.

terrible scourge." *Lievrouw v. Roth*, 157 Wis. 2d 332, 345, 459 N.W.2d 850 (Ct. App. 1990). In 1998 alone, for example, 10,167 people were injured and 388 killed in alcohol-related accidents in Wisconsin. *Id.* at 346. And there is no evidence here that the award was intended to deter the defendant from conduct in any other jurisdictions or to send a message to anyone except those who drive in Wisconsin. Like the award in *Trinity*, the punitive damage award in this case thus serves a legitimate state interest in punishment and deterrence in its own jurisdiction.

¶ 22. The degree of reprehensibly is the most important factor in any excessiveness inquiry and the conduct in this case qualifies as egregious. Hogner testified he had never hurt anyone previously while driving drunk, and never intended to. But those claims do nothing to mitigate his conduct. He admits to four previous arrests for drunk driving—the fifth came as a result of the accident. The drinking pattern established at trial, beginning at 8 a.m. at home and then moving on to taverns, would in addition provide grounds from which to infer that these five occasions of drunk driving represented only a fraction of the times Hogner drank and drove. Hogner's blood-alcohol level was more than three times the .08% level that establishes presumptive intoxication, arguably indicating profound indifference to the health and safety of others. He demonstrated even greater indifference each time he got in his car in search of more alcohol. Other jurisdictions have found, and we agree, that evidence of this sort establishes reprehensibility clearly, convincingly, and substantially. *See, e.g., Stamp v. Jackson*, 887 So. 2d 274, 276 (Ala. Civ. App. 2003).

¶ 23. As the record makes clear, Hogner's conduct caused physical harm, demonstrated reckless indiffer-

147

ence to the health and safety of others, and was part of an admitted pattern of conduct. *See State Farm*, 538 U.S. at 419. While it did not intentionally target economically vulnerable individuals, given the current realities of insurance and medical coverage, it certainly had a strong likelihood of affecting such individuals. *Id.* Four of the five factors used to measure reprehensibility are thus present in this case. The only factor arguably not present, based on Hogner's probable speed when the accident occurred, is "deliberate malice."

¶ 24.   In considering the second guidepost, we must ask whether, despite the state's interest in punishment and deterrence of drunk drivers and the reprehensibility of the conduct at issue, the difference between $2,000 and $225,000 is so excessive it creates the kind of notice problem identified in *BMW* and *State Farm*. If we consider only actual harm, it is hard to argue that Hogner would expect that an accident that caused $2,000 in damages would subject him to a punitive damage award of more than 100 times that amount. In addition, Wisconsin case law[12] tends to disfavor awards whose ratio to compensatory damages is in the double digits. If we consider potential damages,

---

[12] We have recognized that *State Farm* favors single-digit ratios. *See Betterman v. Fleming Cos.*, 2004 WI App 44, ¶ 46, 271 Wis. 2d 193, 677 N.W.2d 673. But we have also recently upheld a punitive damage award that was over thirty times compensatory damages, citing *State Farm*, where a particularly egregious act resulted in only a small amount of economic damages. *Schwigel v. Kohlmann*, 2005 WI App 44, ¶¶ 21–22, 280 Wis. 2d 193, 694 N.W.2d 467. Wisconsin courts have thus remained true to the fundamental premise that "punitive damages must be decided on a case-by-case basis," which requires, as the United States Supreme Court has repeatedly affirmed, rejecting any mathematical ratio as the measure of constitutionality. *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 302, 294 N.W.2d 437 (1980).

however, the excessiveness calculus changes.[13] Hogner's conduct could have injured Strenke seriously or even killed him. Absent what might arguably be called Hogner's "good luck," his conduct thus might easily have resulted in consequential damages that would have put the $225,000 award in the 1:1 or 2:1 range.[14]

¶ 25.  In addition, *State Farm, BMW,* and *Trinity* all recognize that ratios may be higher when an especially egregious act results in only limited economic damages. Though that logic has been applied primarily to cases in which economic damage is hard to quantify, such as civil rights cases,[15] or where small injuries to many can justify larger punitive awards,[16] the principle is applicable to drunk driving cases as well. *See, e.g., Craig v. Holsey,* 590 S.E.2d 742, 747–48 (Ga. App. 2003)

[13] In the seminal "potential harm" case, decided prior to *BMW* and *State Farm,* the Supreme Court upheld a punitive damage award of $10,000,000 in a slander of title case although the actual damage judgment was only $19,000. *TXO Prod. Corp. v. Alliance Res. Corp.,* 509 U.S. 443, 451 (1993). While the majority did not employ the current analytic framework, *TXO* is still good law.

[14] If actual damages had been $25,000, an amount easily reached in car accidents, the punitive damages award would be constitutional even under the must restrictive and mechanical reading of the dicta in *State Farm.*

[15] The Seventh Circuit has upheld awards where the ratio was the double-digit range for Title VII cases. *See, e.g., Lampley v. Onyx Accept. Corp.,* 340 F.3d 478 (7th Cir. 2003).

[16] *Mathias v. Accor Economy Lodging, Inc.,* 347 F.3d 672 (7th Cir. 2003), upheld an award of $186,000 in punitive damages, on only $5,000 compensatory damage, in a case where a hotel infested with bedbugs continued to sell the infested rooms and refused to spray the premises. The court found the 37.2:1 ratio acceptable because the very low compensatory damages awarded to any individual injured traveler would make it unprofitable to bring a lawsuit against a major corpo-

(upholding a punitive damage award of $200,000, a 23:1 ratio, because the potential harm, death, was so much larger than the actual harm). When weighed against the potential damages in this case, an award of $225,000 is not grossly excessive.

¶ 26. Under the 1997–98 statutes, Hogner was subject to fines in the range of several thousand dollars as well as jail time for the precise conduct that injured this plaintiff. The statutory scheme governing drunk driving offenses, with its clear consideration of the problem of repeat offenders, represents the kind of legislative decision-making *State Farm* suggests should receive deference. Those penalties reflect the legislature's judgment about the level of deterrence and punishment necessary to prevent drunk driving. Such a scheme also creates expectations in defendants whose disruption can, in the right circumstances, result in constitutionally insufficient notice.

¶ 27. However, Hogner would also have been subject to far more severe penalties depending on the outcome of his conduct. Unlike a corporation pursuing policies that skirt the law, drivers cannot claim they decide to drive after drinking because they knew they risked only the penalties arising from another OWI. When Hogner drove drunk on the night in question, he knew he risked arrest, incarceration, and a fine. But he

---

ration on the kind of facts before it. *Id.* at 676–77. More recently, a 96:1 ratio was upheld in a tobacco case. *Williams v. Philip Morris, Inc.*, 92 P.3d 126 (Or. App. 2004) (concealing tobacco health risks was tantamount to fraud practiced over a long period of time, justifying the large ratio). *Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.*, 399 F.3d 224 (3rd Cir. 2005), upheld an award of $150,000 in punitive damages, even though the insured's actual loss, in a windstorm, was $2,000. The court added the total attorney fees and costs to that figure, however, to suggest the real ratio was closer to 1:1.

also knew or should have known that, if disaster happened, he would have faced far more serious penalties. Like the jury in *Trinity*, the jury in this case could therefore have concluded that a large punitive damage award would work to support, rather than weaken, the civil and criminal sanctions imposed by the legislature, deterring Hogner and other Wisconsin citizens from gambling that they can drive and drink without seriously injuring themselves or anyone else.[17]

*Remittitur and New Trial*

¶ 28. When the trial court finds that a punitive damage award is the result of passion or prejudice, it does not fix a reasonable amount of damages, it orders a new trial. *Redepenning v. Dore*, 56 Wis. 2d 129, 133–34, 201 N.W.2d 580 (1972). If the court determines a verdict is excessive or inadequate not because of prejudice or passion or as a result of error during the trial, other than an error in the amount of damages, the court has the statutory authority to determine the amount that, as a matter of law, is reasonable. *See* Wis. Stat. § 805.15(6) (2001–02). The party to whom the option is offered may elect to accept that judgment or to have a new trial on the issue of damages alone. *See id.*

---

[17] Hogner argues, albeit in a conclusory fashion, that the award is excessive based on his financial condition. Wisconsin courts have said that one of the factors a jury can consider in awarding punitive damages is the defendant's ability to pay. *See Wangen*, 97 Wis. 2d at 302. However, the fact that Hogner's assets are limited does not by itself mean that the jury failed to consider his wealth or that the award is grossly excessive and we cannot say that a judgment that cannot be immediately satisfied is always, as a matter of law, constitutionally insupportable.

¶ 29.    Although the trial court's judgment did not explicitly address the decision not to grant a new trial, its oral statement that the award "doesn't shock my conscience" indicates it rejected passion and prejudice arguments. The court rejected the remittitur argument directly, albeit briefly, in a July 2004, motion on the issue. Noting that the jury heard evidence about the number of beers Hogner drank in a short period of time and about his intention to continue drinking, the court concluded it "was not going to change" the award.

■■■

¶ 30.    Hogner argues nevertheless that the difference between the requested punitive damage award, $25,000, and the jury award, $225,000, is so excessive the jury must have based its verdict on passion or prejudice. Because the trial court is in the best position to determine whether "perversity pervaded" the verdict, we ordinarily will not upset its conclusions on this point absent an erroneous exercise of discretion. *Redepenning*, 56 Wis. 2d at 134. When the court does not set forth its reasons, however, we review the record independently to determine if the court made a reasonable inquiry and based its decision on facts in the record. *See McCleary v. State*, 49 Wis. 2d 263, 277–78, 182 N.W.2d 512 (1971). We see no evidence that the jury's verdict reflected "emotional, inflammatory, and immaterial considerations" and Hogner's only support for this argument is the assertion that the punitive damage award was too high in relation to the requested award.[18] *See Fahrenberg v. Tengel*, 96 Wis. 2d 211, 224, 291 N.W.2d 516 (1980).

---

[18] When a punitive damage award reflects bias, passion or prejudice rather than a rational interest in deterrence and retribution, the Constitution is violated no matter what size the award. *TXO*, 509 U.S. at 467 (Kennedy, J., concurring). However,

¶ 31.  Hogner's argument that the trial court erred by not remitting the award only restates his constitutional argument. Because we have already rejected that argument, it cannot serve as a basis for claiming that the trial court erred when it did not find that the jury's verdict was excessively large as a matter of fact.

*By the Court.*—Judgment affirmed.

the size of the award is not "the sole, or even necessarily the most important, sign" of such improprieties. *Id.*