**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 22, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2025AP272-FT**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2024ME16**

**IN COURT OF APPEALS
DISTRICT III**

---

IN THE MATTER OF THE MENTAL COMMITMENT OF L. R. Y.:

WASHBURN COUNTY,

    PETITIONER-RESPONDENT,

V.

L. R. Y.,

    RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Washburn County: ANGELINE E. WINTON, Judge. *Reversed.*

¶1    STARK, P.J.[1]  Lily appeals orders for her involuntary commitment pursuant to WIS. STAT. § 51.20 and for her involuntary medication and treatment

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). This is an expedited appeal under WIS. STAT. RULE 809.17 (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

pursuant to WIS. STAT. § 51.61(1)(g).[2] Lily argues that the circuit court violated her right under WIS. STAT. § 885.60(2)(d) to have Washburn County's fact witnesses testify in person at her WIS. STAT. ch. 51 final hearing by permitting those witnesses to appear by videoconferencing over her objection. We conclude that pursuant to § 885.60(2)(d), the court erred by failing to sustain Lily's objection to the County's fact witnesses appearing at the final hearing by videoconferencing. We further conclude that the County has failed to meet its burden to prove that this error was harmless. Accordingly, we reverse the circuit court's orders.

## BACKGROUND

¶2 Lily was emergently detained in August 2024 after being evaluated for her competency to proceed in a criminal trial. After a hearing, the circuit court found probable cause to believe that Lily was mentally ill, drug dependent, or developmentally disabled; a proper subject for treatment; and dangerous to herself or others. The court ordered that a final hearing be held and that Lily be examined by both psychiatrist Dr. Marshall Bales and psychologist Dr. Kristine Nehring.

¶3 Lily demanded a six-person jury trial pursuant to WIS. STAT. § 51.20(11). On August 14, 2024, Lily filed motions in limine, in which she noted that her "procedural due process right to confront the witnesses against [her] shall not be infringed by allowing out-of-court 'expert opinions' or 'testimonial statements' into evidence." On August 15, 2024, the County filed requests for each of its five witnesses to appear remotely, by videoconferencing.

---

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials.

¶4    In August 2024, the circuit court held a status conference, during which Lily's counsel reiterated Lily's objection to videoconference testimony and stated, "I think we need to have witnesses here. And I think the [c]ourt has the authority to do that." The court responded by asking Lily's counsel if he was "aware of any statutory preclusion from the [c]ourt holding the hearing via videoconference if I deem that appropriate?" The court also asked, "What does confrontation say about the ability to have some witnesses … appear via videoconference," "[d]oesn't [Lily] have a decent ability to confront—even though on video," and "isn't [Lily] able to confront those witnesses or does she have a right to have them seated here in person in the box?" Lily's counsel responded, "I think for the fact witnesses she has a right to have them here in the box. I concede in all candor, I know there's caselaw that says that the expert witness can appear remotely."

¶5    Citing the need to weigh "the issue of convenience" with the "significant potential deprivation" of "[Lily's] liberty," the circuit court asked for an "offer of proof" about the "logistics" of fact witnesses appearing in person. The County responded that the fact witnesses would have over a four-to-five-hour drive to appear at trial and that they had scheduling issues, preventing them from appearing at trial on the dates scheduled.

¶6    The circuit court then found that there appeared "to be somewhat of a stipulation as to those expert witnesses being allowed to appear remotely," and it entered orders permitting Drs. Bales and Nehring to appear at the jury trial by videoconferencing. Despite noting that "having a jury trial where the jurors are all here in person, they're attempting to decipher testimony when there's basically talking heads on a screen is going to be less productive than having actual witnesses here in person," the court later entered orders permitting the County's

three fact witnesses—Erin Oxley, Nichole Jelinek, and Mario Kramer (the "fact witnesses")—to testify at the jury trial via videoconferencing as well.[3]

¶7    At the trial, all five of the County's witnesses testified via videoconferencing. Lily characterizes the testimony of the fact witnesses as having "provid[ed] the evidence required to prove that a recent act or omission established [Lily's] dangerousness as required to reach the special verdict." The County does not dispute or otherwise disagree with this characterization.

¶8    The jury subsequently entered a verdict finding that Lily is mentally ill, a proper subject for treatment, and dangerous under WIS. STAT. § 51.20(1)(a)2. The circuit court entered an order of commitment consistent with the jury's verdict and an order for involuntary medication and treatment pursuant to WIS. STAT. § 51.61(1)(g). Lily now appeals.

**DISCUSSION**

¶9    Lily argues that the circuit court erred by permitting the County's fact witnesses to appear by videoconferencing at her final hearing over her objection, in violation of WIS. STAT. § 885.60(2)(d).[4] A circuit court generally has

---

[3] We note that some documents in the record refer to the third fact witness as being named "Mario Kramer," whereas other documents refer to the witness as being named "Marlo Kramer." We further note that Kramer did not testify at the trial and that Kiara Rasmussen testified at trial via videoconferencing, although there was not an order request or an order for Rasmussen to testify via videoconferencing. These discrepancies do not affect our analysis.

[4] Lily also argues that permitting the County's fact witnesses to testify by videoconferencing violated her due process right to confront and cross-examine witnesses. Because we conclude that Lily's statutory rights were violated and the County has not met its burden of proving that this error was harmless, we need not address Lily's due process claim. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (noting that we need not address all issues when the resolution of one of those issues is dispositive).

"broad discretion to allow or disallow testimony by videoconferencing." *See State v. Atwater*, 2021 WI App 16, ¶29, 396 Wis. 2d 535, 958 N.W.2d 533; WIS. STAT. §§ 885.58, 885.60. However, § 885.60 removes the circuit court's discretion to allow videoconferencing if a defendant or respondent objects to its use and the defendant or respondent is entitled to be physically present in the courtroom. Sec. 885.60(2)(d). Accordingly, Lily's argument presents issues of statutory interpretation and application, which are questions of law that we review de novo. *See McNeil v. Hansen*, 2007 WI 56, ¶7, 300 Wis. 2d 358, 731 N.W.2d 273.

¶10 "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex. rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.*, ¶46 (citation omitted).

¶11 WISCONSIN STAT. § 885.60 provides:

> (1) Subject to the standards and criteria set forth in [WIS. STAT. §§] 885.54 and 885.56 and to the limitations of sub. (2), a circuit court may, on its own motion or at the request of any party, in any criminal case or matter under [WIS. STAT.] chs. 48, 51, 55, 938, or 980, permit the use of videoconferencing technology in any pre-trial, trial or fact-finding, or post-trial proceeding.
>
> (2)(a) Except as may otherwise be provided by law, … a respondent in a matter listed in sub. (1) is entitled to be physically present in the courtroom at all trials and sentencing or dispositional hearings.
>
>  ….

> (d) If an objection is made by the defendant or respondent in a matter listed in sub. (1), regarding any proceeding where he or she is entitled to be physically present in the courtroom, the court *shall* sustain the objection. For all other proceedings in a matter listed in sub. (1), the court shall determine the objection in the exercise of its discretion under the criteria set forth in WIS. STAT. § 885.56.

(Emphasis added.)

¶12    It is undisputed that Lily is the respondent in this WIS. STAT. ch. 51 proceeding and that she was entitled to be physically present in the courtroom during the final hearing. The County nevertheless argues that Lily waived her right to object to its witnesses testifying via videoconferencing by failing to make an objection during the status conference.[5] Specifically, the County points to Lily's counsel's statement that he "think[s] for the fact witnesses she has a right to have them here in the box. I concede in all candor, I know there's caselaw that says that the expert witness can appear remotely." The County characterizes this statement as "not an objection" because "counsel did not provide the circuit court with any statutory" basis to preclude its witnesses from appearing by videoconferencing. The County further argues that Lily waived her objection to its fact witnesses appearing remotely because she "did not provide the circuit court with grounds for an objection under WIS. STAT. § 885.60 at the status conference or in [Lily]'s motion in limine."

¶13    The County fails to acknowledge, however, that while Lily conceded that expert witnesses may testify remotely, she repeatedly objected at the status

---

[5] "Waiver" is defined as "the intentional relinquishment or abandonment of a known right." *State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (citation omitted).

conference to the County's fact witnesses testifying by videoconferencing. While Lily did not mention WIS. STAT. § 885.60 at the status conference, Lily renewed her objection at the beginning of the trial and explicitly cited § 885.60 as requiring the County's fact witnesses to appear in person. There is nothing in the record to suggest that Lily intentionally relinquished or abandoned her right to have the County's fact witnesses testify at the final hearing in person. Further, the circuit court was clearly on notice from Lily's motion in limine as well as her counsel's statements at the status conference that Lily objected to the fact witnesses appearing by videoconferencing, and the court was provided with the statutory basis for Lily's objection prior to their testimony.[6]

¶14 The County does not address the merits of Lily's claimed statutory violation, which we take as a concession that Lily's statutory right to have all fact witnesses be physically present in the courtroom was violated. *See United Co-op. v. Frontier FS Co-op.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (noting that the lack of a response to an issue may be taken as a concession). Accordingly, we conclude that pursuant to WIS. STAT. § 885.60(2)(d), the circuit court was required to sustain Lily's objection to the County's fact witnesses testifying at the final hearing via videoconferencing, and it erred by failing to require their personal appearance in the courtroom during their testimony.

---

[6] Even if we concluded that the County correctly argued that Lily waived her objection to the fact witnesses' personal appearances at the final hearing, we note that "[t]he waiver rule is a rule of judicial administration," and we may, in our discretion, "disregard a waiver and address the merits of an unpreserved issue in exceptional cases." *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶17, 273 Wis. 2d 76, 681 N.W.2d 190. We consider a WIS. STAT. ch. 51 action, where the liberty interest of the subject individual is at issue, and where WIS. STAT. § 885.60(2)(d) preserves the subject's right to have fact witnesses appear personally at a final hearing, to be such an exceptional case. *See Dane County v. Stevenson L.J.*, 2009 WI App 84, ¶11, 320 Wis. 2d 194, 768 N.W.2d 223.

¶15 We note that WIS. STAT. § 805.18(1) provides, "The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party." Our supreme court has characterized this statute as providing "a 'strong presumption' that an error is subject to a harmless-error review."[7] *State v. Nelson*, 2014 WI 70, ¶29, 355 Wis. 2d 722, 849 N.W.2d 317 (citation omitted). The County does not argue that the circuit court's violation of WIS. STAT. § 885.60(2)(d) constituted harmless error. We note, however, that "[t]he harmless error rule … is an injunction on the courts, which, if applicable, the courts are required to address regardless of whether the parties do." *State v. Harvey*, 2002 WI 93, ¶47 n.12, 254 Wis. 2d 442, 647 N.W.2d 189.

¶16 As the beneficiary of this error, the County bears the burden of proving that the error was harmless. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). "The standard for harmless error is the same for civil and criminal cases. The test is whether there is a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." *Schwigel v. Kohlmann*, 2005 WI App 44, ¶11, 280 Wis. 2d 193, 694 N.W.2d 467; *Barron County v. K.L.*, No. 2021AP133, unpublished slip op., ¶35 (WI App Aug. 9, 2022).[8] "[T]his court must be satisfied … that the jury *would* have arrived at the same verdict had the error not occurred." *State v. Martin*, 2012 WI 96, ¶45, 343 Wis. 2d 278, 816 N.W.2d 270.

---

[7] WISCONSIN STAT. § 51.20(10)(c) similarly provides, "The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings that does not affect the substantial rights of either party."

[8] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

¶17   On this record, we cannot conclude that the circuit court's failure to sustain Lily's objection to the County's fact witnesses testifying via videoconferencing was harmless error.   As noted above, the County does not address this issue.   The only basis for the County's request for its fact witnesses to appear by videoconferencing was that they would have to travel several hours to attend the final hearing in person.   The court expressed concern about whether Lily's ability to defend the claims in this matter would be impacted by not having the witnesses personally present in the courtroom.   It nevertheless made no findings regarding Lily's ability to fully and effectively cross-examine the fact witnesses, nor did the court discuss the jurors' ability to see and understand the witnesses and to assess their credibility.

¶18   We therefore cannot be satisfied that the jury would have arrived at the same verdict had the error not occurred.   Because the burden lies with the County to prove that the error was harmless, and because the legislature clearly thought it important for the subject of a WIS. STAT. ch. 51 hearing to confront the witnesses face-to-face, we cannot conclude that this error was harmless.

¶19   Accordingly, we reverse the order for Lily's involuntary commitment.   Because there cannot be an involuntary medication order without an underlying involuntary commitment, we also reverse the involuntary medication order.   *See* WIS. STAT. § 51.61(1)(g).

*By the Court.*—Orders reversed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)4.