COURT OF APPEALS
DECISION
DATED AND FILED

January 25, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2003**

**STATE OF WISCONSIN**

Cir. Ct. No. **2022CV160**

**IN COURT OF APPEALS
DISTRICT IV**

LAURA HICKS,

    PETITIONER-RESPONDENT,

  V.

ALEX G. KLINKER,

    RESPONDENT-APPELLANT.

 

APPEAL from an order of the circuit court for Juneau County: STACY A. SMITH, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. § 809.23(3).**

¶1 PER CURIAM. Alex Klinker appeals a harassment injunction entered against him for the protection of Laura Hicks. Klinker contends that the

circuit court denied Klinker his due process right to fundamental fairness by not allowing him to fully put on a case, call witnesses, and otherwise be "heard in a meaningful fashion." He argues that this violation of his due process rights requires reversal and remand for a new hearing. We assume without deciding that the circuit court violated Klinker's rights by ruling on the injunction petition before allowing Klinker to present all of the evidence that he sought to present, but we conclude that reversal is not required because the assumed error is harmless.

¶2　　In a related argument, Klinker contends that the circuit court demonstrated objective bias at the hearing by depriving Klinker of his right to put on a case and by disregarding evidence that Klinker described in a proffer aimed at showing that he had a legitimate purpose in communicating with Hicks as he, for the most part, admits that he did. Hicks argues that Klinker forfeited the bias argument by failing to raise it at the original hearing. We choose to overlook the potential forfeiture, but we conclude that Klinker fails to meet his burden to show that the court was objectively biased.

¶3　　Accordingly, we affirm the circuit court's order.

## BACKGROUND

¶4　　Hicks filed a petition for an injunction against Klinker under WIS. STAT. § 813.125 (2021-22) ("Harassment restraining orders and injunctions.").[1] Hicks and Klinker share a child. The petition alleged that Klinker had violated a circuit court order in a family law action prohibiting Klinker from contacting

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Hicks, absent an emergency. The petition further alleged that Klinker engaged in harassment against her. Specifically, Hicks alleged that he repeatedly texted and called her, accusing her of illegally using drugs, and needlessly made harshly abusive comments in a notebook that the two exchanged, even though the notebook was supposed to be used exclusively to address matters related to their child. Hicks contended that this constituted "[e]ngaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose." *See* § 813.125(1)(am)4b.

¶5    The circuit court held a hearing on the petition. Hicks, through counsel, called Klinker and examined him as an adverse witness. Klinker was then cross examined by his own counsel. During Klinker's cross examination, the circuit court concluded that there was sufficient evidence to issue the injunction and declared the evidentiary portion of the hearing to be closed. The court entered the harassment injunction against Klinker for a term of four years. Klinker appeals.

## DISCUSSION

¶6    We first address Klinker's argument that reversal is merited due to the timing of the circuit court's termination of the evidentiary portion of the hearing and then we address his judicial bias argument.

### I. Closure of Evidence

¶7    When the circuit court announced that evidence was closed and that it would issue the injunction, Klinker took the position that he had more evidence to present. But the court declined, after hearing a proffer of that evidence, to allow him to more fully present it. Klinker argues that this violated his due process

3

rights.  Hicks contends that there was no error of any kind, including no due process violation.  We assume without deciding that the court violated Klinker's due process rights by closing evidence before Klinker was able to put on his own case.  This raises the following issues:  (1) whether the assumed error is subject to automatic reversal or harmless error review; and (2) if it is subject to harmless error review, whether it affects Klinker's substantial rights and therefore warrants reversal.  *State v. C.L.K.*, 2019 WI 14, ¶30, 385 Wis. 2d 418, 922 N.W.2d 807 (in assessing the nature of an error, we first "determine whether the error is structural in nature[, i]f it is not, then (and only then) we assess the error's harmlessness," *i.e.*, "consider whether it prejudiced the defense").  Determining the nature of an error presents an issue of law for our independent review.  *See State v. Travis*, 2013 WI 38, ¶9, 347 Wis. 2d 142, 832 N.W.2d 491.

¶8      To explain further, this determination relates to "a dichotomy of error types."  *State v. Nelson*, 2014 WI 70, ¶30, 355 Wis. 2d 722, 849 N.W.2d 317 (citing *Arizona v. Fulminante*, 499 U.S. 279, 307-10 (1991)).  On one side of the dichotomy is a potentially harmless error that "'occur[s] during presentation of the case' at trial when the effect of that error "may be quantitatively assessed in the context of other evidence presented in order to determine whether [the error was] harmless beyond a reasonable doubt.'"  *Id.* (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006)).  If an error does not affect substantial rights, it must be disregarded.  WIS. STAT. § 805.18; *see also Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶¶28, 35, 246 Wis. 2d 1, 629 N.W.2d 768 (stating that if the error is not sufficient to undermine the reviewing court's confidence in the outcome of the proceeding, the error is harmless).

¶9      On the other side of the dichotomy are structural errors.  These "defy analysis by harmless-error standards because they affec[t] the framework within

which the trial proceeds, and are not simply ... error[s] in the trial process itself." *Nelson*, 355 Wis. 2d 722, ¶30 (quoting *Gonzalez-Lopez*, 548 U.S. at 148) (internal quotation marks omitted; alterations in *Nelson*). Structural errors are "so intrinsically harmful as to require automatic reversal." *Neder v. United States*, 527 U.S. 1, 7 (1999). Only a limited number of errors "require automatic reversal," because "most constitutional errors can be harmless …." *Nelson*, 355 Wis. 2d 722, ¶29 (quoting *Fulminante*, 499 U.S. at 306) (internal marks omitted).

¶10 Depending on the circumstances of a case, the testimony of an accused person (here, Klinker, accused of harassment) may be of particular importance to the issues in a case. *See Nelson*, 355 Wis. 2d 722, ¶33. But this consideration does not necessarily mean that when a court limits such testimony in error it is impossible for a court to subsequently assess whether the error was harmless. *See id.*

¶11 With these standards in mind, we turn to additional pertinent background. Klinker's testimony on direct examination by Hicks's counsel included numerous admissions against his interest. The testimony included the following. Klinker contacted Hicks directly through text messages and a phone call in which he blocked caller-ID from identifying his number. In one text message, Klinker referred to Hicks as a "junkie cunt." As Klinker acknowledged in his testimony—and he also acknowledged in one text message that he sent to Hicks—his directly communicating with Hicks violated the order of the family law court. Under that order, absent an emergency, the only method of communication permitted between Klinker and Hicks was the exchange of a physical notebook, and the notebook was to be exclusively devoted to matters pertaining to their child. In the notebook, Klinker called Hicks "a junkie piece of shit" and stated "[p]erhaps you should get a 40 hour a week job, which does drug

5

testing regularly." When asked how those messages were related to their child, Klinker testified that Hicks "is on drugs around" the child. Klinker testified: "I was trying to explain to her that she might be able to stay off drugs if she got a regular job that [includes] drug testing." Klinker repeatedly communicated with Hicks because he was "really sick of drug addicts being [the child's] babysitter." Klinker publicly (on his Facebook page) criticized Hicks, stating: "[S]he gets a shit ton of child support and welfare[,] so paying for a decent sitter shouldn't be a problem"; and "I sure have to deal with a lot of junkie bullshit from pieces of shit."

¶12 The circuit court asked Klinker if he had evidence to present showing that Hicks ever faced drug-related charges or convictions. Klinker testified that he had none. Klinker further testified that, six months before the hearing, Hicks voluntarily provided Klinker with two negative drug test results over the course of a several-month period. Klinker expressed skepticism about the validity of these two negative drug tests and expressed the view that Hicks should undergo a "hair follicle" drug test. Klinker acknowledged, however, that he had not taken steps in the family law litigation to address his purported concerns about her alleged drug use.

¶13 During Klinker's cross examination by his counsel, counsel first attempted to introduce a series of text messages exchanged between Klinker and individuals who were purportedly acquainted with Hicks. One message, for example, purported to reflect that Hicks's acquaintance asserted that Hicks was involved with drugs in the presence of the child. Hicks's counsel objected based on hearsay. Klinker's counsel argued that the text messages were offered not for the truth of the matter asserted but rather for their effect on Klinker as the

recipient. The court sustained the objection (in a ruling not specifically challenged by Klinker in this appeal) and remarked as follows:

> Well[,] just reading the first page of [the offered texts] I think this is almost a form of harassment just by [Klinker] trying to bring this in [to evidence].
>
> ….
>
> I'm not going to allow it. [Klinker] has no right to … what I'm hearing here[,] let's move it along but [the court is] really close to just calling the ball game right now. All I'm hearing is how he's trying to control her. They don't have a relationship where he can control her. So … go ahead counsel. I'm not allowing [the texts].

¶14 Klinker's cross-examination testimony continued as follows. Klinker had heard allegations that Hicks was using and selling drugs around their child and that she had drug addicts babysitting him. Klinker had heard reports of drugs being sold from Hicks's residence. He had also heard that individuals Hicks had chosen as babysitters had prior convictions related to drugs.

¶15 Hicks objected to this testimony on relevance grounds. Klinker's counsel argued that the testimony was relevant because it demonstrated Klinker's legitimate purpose: Klinker, in making the communications alleged to constitute harassment, was "trying to protect [the child] from being around drugs."

¶16 The circuit court ruled that it was terminating Klinker's testimony, and then said the following:

> That would have been fine had it not been for the family court and also this is the third time this injunction has been filed. [Klinker] knows he could have brought a motion into the family court. If a judge or court commissioner would have found it at that point they would have investigated it. This is not the proper forum to investigate such things. Just because he thought it doesn't [give] him [the] right to harass her.

7

The court then ruled that there would be no further evidence and concluded that there was sufficient evidence to establish that Klinker had engaged in harassment under WIS. STAT. § 813.125.

¶17 Klinker objected to the circuit court closing evidence and asked for the opportunity to make an offer of proof, which the court granted. Counsel said that he intended to introduce the results of the drug tests for both Klinker and the parties' child, which he represented were negative for Klinker but showed that the child had been exposed to methamphetamine. The circuit court reviewed the test results, then said:

> I'm going to allow it for what it's worth which isn't anything because as far as I know the way Klinker acts he could have been the one giving the child some drugs as far I know. You know, if you are harassing and you're trying to get somebody in trouble, you could be the one setting up the child in this way. There is no evidence except for the fact that the child has drugs.… [Klinker] even testified that [Hicks] has had clean drug results, she's never been arrested, never been convicted. He has other options in this case. He could have [gone] to the family court and proven a case through family court. This is not one of these areas that he can continue harassing her by doing these activities.

The court noted that, through the family court order, Klinker had been "warned," apparently meaning warned not to contact Hicks, and that Klinker acknowledged that he had violated the order. The court further noted that Klinker had not been held in contempt for these violations of the order, "but he's dang close to getting a criminal charge if the [district attorney charges Klinker with] stalking because [Klinker] does not have a right to enforce any of his views on her."

¶18 Klinker's counsel objected again to the circuit court ruling on the petition without taking further evidence. The court overruled that objection and

entered the injunction against Klinker for the statutory maximum of four years.[2] The court elaborated more on its reasoning later in the same hearing:

> It came out of [Klinker's] own mouth [in his testimony]. I didn't need to hear anything else because he already hit all the issues of conduct and a course of conduct meaning repeated conduct where he admitted that he was sending messages, he admitted to calling her, he admitted to doing these things and there was no legitimate reason that I can see for a lot of the comments.

The court further touched on the topic of Klinker's allegation that Hicks was using drugs, saying that Klinker "could have brought a motion [in the family court case] if he was really fearful that [Hicks] was using drugs." The court further said that it was "frustrated" with how Klinker in these communications "was even dictating to Ms. Hicks on what kind and how she should do a drug test," despite there being "no evidence of" her using drugs.

¶19 At the conclusion of the circuit court's elaboration on its reasoning, it asked counsel for each party whether they had "[a]nything else" to raise with the court. Both replied in the negative.

¶20 With that additional background in mind, we turn to the merits of the dispute.

¶21 Although *C.L.K.*, referenced above, is not cited by either party and is distinguishable in important respects, it helps guide our analysis. There, C.L.K. was called adversely as the State's sole witness in the grounds phase of a proceeding to terminate his parental rights, and he admitted to not having seen or

---

[2] At this point, Klinker also argued that a firearms prohibition would be inappropriate and the circuit court agreed. No aspect of this ruling is challenged by either party on appeal.

contacted his children for an extended period. *C.L.K.*, 385 Wis. 2d 418, ¶4. During both the cross examination by C.L.K.'s own attorney and the following redirect examination, C.L.K. attributed his absence to a social worker's instructions. *Id.*, ¶5. After C.L.K.'s testimony, but before he had a chance to put on his case, the circuit court granted a directed verdict in favor of the State, determining that C.L.K. had abandoned his children. *Id.*, ¶9; *see also* WIS. STAT. § 48.415(1)(a)2. (2015-16).

¶22 Our supreme court stated that the circuit court had erred and that its error was structural because the error "did not just 'affect' the framework [within which the trial proceeded], it completely eliminated half of it." *C.L.K.*, 385 Wis. 2d 418, ¶35. By limiting C.L.K.'s ability to present his case to the prosecutor's questions of him and his counsel's cross examination, the court deprived C.L.K. of the opportunity to present a meaningful, complete defense in regard to the fundamental elements justifying termination in the grounds phase. *Id.* (stating that "the circuit court did not allow [C.L.K.] to decide who his witnesses would be, the order in which they would testify, or the evidence he would seek from each one"). As a result of the circuit court's challenged actions, the supreme court concluded, the State had become "the sole expositor of the theory of the case." *Id.* This left "no adequate context within which to conduct a quantitative analysis of the missing testimony." *Id.* It was also relevant to the supreme court that there are heightened protections for parties in the proceedings of parental rights termination, because "they implicate a parent's fundamental liberty interest." *Id.*, ¶15 n.8 (citing *Brown County v. Shannon R.*, 2005 WI 160, ¶59, 286 Wis. 2d 278, 706 N.W.2d 269 ("Although they are civil proceedings, termination of parental rights proceedings deserve heightened protections because they implicate a parent's fundamental liberty interest.")).

¶23    Here, unlike in ***C.L.K.***, the effect of the circuit court's assumed error can be, in the words of ***Gonzalez-Lopez***, "quantitatively assessed in the context of other evidence presented in order to determine whether [the error was] harmless beyond a reasonable doubt." *See **Gonzalez-Lopez***, 548 U.S. at 148.  It is true that Klinker's only testimony came through the questioning of Hicks's counsel and through his own counsel's cross examination.  But Klinker was nonetheless given multiple opportunities to alert the court to, and to support, his theory of the case, which was based exclusively on a legitimate-purpose defense—a defense resting on the proposition that Hicks was taking actions that risked exposing the child to harmful drugs.  This occurred first during Hicks's attorney's examination of Klinker, then during Klinker's attorney's cross examination.  Further, Klinker was allowed to make an offer of proof and was given the chance to make whatever arguments he wanted to make.  Further, even now on appeal, Klinker does not indicate any additional lines of questioning that his attorney was not allowed to pursue or any other witnesses or evidence that he should have been allowed to present.

¶24    In addition, Klinker does not point to any heightened protection of the kind present in ***C.L.K.***  Moreover, both Klinker and Hicks were represented by counsel, which helps to produce a record that allows for quantitative assessment.  Therefore the assumed error affected only the quantity of evidence presented, not the entire proceeding.  It is not a structural error that requires automatic reversal.

¶25    Klinker argues that this case is analogous to ***State ex rel. Kaufman v. Karlen***, 2005 WI App 14, 278 Wis. 2d 332, 691 N.W.2d 879.  He contends that here, as in ***Kaufman***, the circuit court erred by failing to consider a fully developed record before ruling on the merits.  *See **id.***, ¶9.  ***Kaufman*** is distinguishable.  In ***Kaufman***, the circuit court ruled on the merits of an inmate's

11

petition for a writ of certiorari by dismissing the petition after the petition and its attached exhibits were filed but before the court received additional information of any kind. *See id.*, ¶¶3-4. Thus, the circuit court ruled "without consideration of the full record and briefs from the parties" because the respondent did not file its "return" pleading; further, a certified copy of the underlying administrative proceedings was not before the court when it ruled on the merits. *Id.*, ¶¶4, 8-9. The combination of these circumstances violated the petitioner's due process right to have the merits addressed based on an adequate record and briefing of the parties. *Id.*, ¶9. Here, Klinker fails to show that the decision of the circuit court to rule on the injunction petition without taking additional evidence had the effect of ruling on the merits without giving him the opportunity to offer evidence and arguments, as occurred in *Kaufman*.

## II.  Harmless Error

¶26    Having determined that the circuit court's limitation on Klinker's ability to present his case was not a structural error, we now assess whether the assumed error was harmless. *See C.L.K.*, 385 Wis. 2d 418, ¶30. The standard for harmless error is "whether there is a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." *Schwigel v. Kohlmann*, 2005 WI App 44, ¶11, 280 Wis. 2d 193, 694 N.W.2d 467. A reasonable possibility of a different outcome is a possibility sufficient to "undermine confidence in the outcome." *Id.*

¶27    Our supreme court applied the harmless error test in *Nelson*, concluding that, although the circuit court's error affected the quantity of evidence presented, the denial of Nelson's right to testify was harmless, because the jury would have arrived at the same verdict had the error not occurred. *Nelson*, 355

Wis. 2d 722, ¶¶44, 46 (applying a four-factor test: (1) the importance of the defendant's testimony to the defense case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contradicting the defendant on material points; and (4) the overall strength of the prosecution's case); *see also Schwigel*, 280 Wis. 2d 193, ¶11 ("The standard for harmless error is the same for civil and criminal cases."). Applying these factors here, we conclude that the court's assumed error in ruling on the injunction petition after limiting Klinker's ability to present his case was harmless. As we explain below, each of these factors weighs in favor of that conclusion.

*The Importance of Klinker's Testimony to the Defense Case*

¶28 Regarding the first *Nelson* factor, the importance of the testimony to the defense case, there is no doubt that Klinker's testifying was important to his legitimate-purpose defense. Significantly, however, Klinker was able to testify, albeit not as extensively as he would have liked, in support of this defense. Specifically, Klinker was able to testify at length about his concerns regarding Hicks allegedly using drugs and alleged drug use by others that Hicks allowed to be around their child. In addition, Klinker's counsel had the opportunity to submit an offer of proof regarding what additional evidence Klinker sought to present through his direct testimony. This amounted to Klinker's drug test results purporting to show that he had had a clean test but that their three-year-old child had been exposed to methamphetamine.

¶29 Given these facts, application of this factor is more precisely a determination of the importance of any *additional* testimony or evidence that Klinker would have sought to provide had the circuit court allowed it, beyond what he did in fact offer. However, Klinker fails even to broadly outline what

additional testimony he would have provided that would have mattered to his legitimate-purpose defense. For example, he does not explain what additional testimony he would have provided that could have altered the probative weight that the circuit court gave to the drug test results that Klinker claimed to have. This is fatal here because the record reflects that Klinker was able to present both the core substance of his relevant evidence, along with at least a preview of the full scope of his intended defense. Given that, he fails to show why we should have a reasonable doubt that the court's decision to end the taking of evidence when it did was not harmless.

¶30 Stepping back, it seems likely that Klinker's ability to testify more fully in support of his defense may have been subjectively important to him, to allow him to "recount events from [his] own perspective" and have his "voice heard." *See Nelson*, 355 Wis. 2d 722, ¶47. At the same time, however, that subjective desire is not central to the purpose of harmless error review, which is concerned with the accuracy of the outcome in the circuit court. *See id.* Klinker essentially admitted to the conduct that he was accused of in the petition. He also had the opportunity to describe his allegedly exculpatory motivation for doing those things and to both offer evidence and indicate the nature of other evidence that he claimed supported that motivation. He fails to articulate what he would have added through additional testimony that would have increased the accuracy of the injunction hearing. *See id.*

*The Cumulative Nature of the Klinker's Testimony*

¶31 The deficiencies in Klinker's arguments on the first *Nelson* factor similarly undermine his position regarding the second factor, which involved the cumulative nature of the evidence that he would have presented if the circuit court

14

had not closed the evidence when it did. Because it is unclear from the record or from Klinker's arguments on appeal what additional evidence he would have provided with more opportunity, he fails to describe any non-cumulative, relevant evidence that he was not allowed to present.

*The Presence or Absence of Evidence Corroborating or Contradicting Klinker on Material Points*

¶32    Given the apparent lack of other evidence or argument Klinker intended to introduce at the hearing, he fails to explain how allowing him to present the evidence that he summarized in his proffer would have resulted in relevant, non-cumulative proof that could have corroborated him on any key point regarding his legitimate-purpose defense. The circuit court's reasoning was at least in part that, instead of pursuing lawful avenues to address Hicks's alleged illegal drug use, Klinker opted for a harassing approach to address it. Klinker did this, the court determined, because he was "trying to control [Hicks]" by "dictating to [her] on what kind and how she should do a drug test." Klinker gives us no reason to think that the proffered evidence, if offered and credited by the court, would have changed the court's reasoning.

*The Overall Strength of the Hicks's Harassment Case*

¶33    Regarding Hicks's affirmative case for harassment, to repeat, Klinker admitted that, to a large extent, he engaged in the conduct he was accused of, which he does not dispute constituted harassment under WIS. STAT. § 813.125, at least before factoring in his legitimate-purpose defense. This included, for example, repeatedly contacting Hicks and describing her with foul and demeaning language, as described above. Moreover, Klinker conceded that these communications contravened the family court order under which Klinker was

required to limit his interactions with Hicks to a shared physical notebook and solely concerning matters pertaining to their child, except in cases of emergency. Klinker does not dispute that, before factoring in the value of his defense, this course of conduct constituted engaging in harassment against Hicks. *See Bachowski v. Salamone*, 139 Wis. 2d 397, 407, 407 N.W.2d 533 (1987) ("Harass means to worry and impede by repeated attacks, to vex, trouble or annoy continually or chronically, to plague, bedevil or badger."). The circuit court had ample factual basis to determine that the nature of his actions extended beyond a legitimate purpose of protecting the child and constituted an illegitimate purpose of harassing. *See id.* at 408 ("[C]onduct or repetitive acts that are intended to harass or intimidate do not serve a legitimate purpose.").

¶34    As to his sole defense of legitimate purpose, Klinker fails to show that, contrary to the circuit court's reasoning, the defense is entitled to significant weight in the harmless error analysis. As discussed regarding the third factor, the court determined that Klinker's desire to control Hicks caused him to harass her on the drug-use topic, regardless of any legitimate concerns he might have harbored about her drug use.

¶35    It is also significant that when allegedly harassing conduct serves more than one purpose, as long as any part of the conduct is intended to harass, the "conduct may be enjoined under WIS. STAT. § 813.125." *Board of Regents-UW Sys. v. Decker*, 2014 WI 68, ¶38, 355 Wis. 2d 800, 850 N.W.2d 112 (stating that the conduct undertaken with the intent both to legitimately protest and to harass could constitute harassment). Our supreme court has explained that allowing a "legitimate purpose to automatically protect[]" conduct that also has, in part, an "illegitimate purpose" would be "senseless" and contradict the principle "that intentionally harassing conduct can *never* serve a legitimate purpose." *Id.*

16

(emphasis in original). Here the circuit court found sufficient evidence to support a conclusion that Klinker engaged in harassment, at least in part with the intent to harass Hicks. Klinker fails to show how his purported subjective concern over drug use could justify the conduct that supported the determination that he engaged in harassment.

### III. Objective Bias

¶36    Klinker argues that the circuit court demonstrated in several different ways that it "in fact treated [Klinker] unfairly," and thus objective bias was present, requiring reversal and remand. *See **State v. Goodson***, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385 ("The right to an impartial judge is fundamental to our notion of due process."). Hicks argues that Klinker forfeited an argument that the court was biased against him by failing to raise the issue at the original hearing. Further, Hicks contends that Klinker failed to show bias by a preponderance of the evidence. We assume without deciding that Klinker did not forfeit the bias issue.[3]    However, we nonetheless conclude that Klinker fails to show that the circuit court was objectively biased against him.

¶37    "We presume a judge has acted fairly, impartially, and without bias." ***Goodson***, 320 Wis. 2d 166, ¶8. "The party asserting judicial bias has the burden to show, by a preponderance of the evidence, that the judge was biased or prejudiced." ***Miller v. Carroll***, 2020 WI 56, ¶¶16, 21, 392 Wis. 2d 49, 944 N.W.2d 542. To establish objective bias, Klinker must establish that there was "'a

---

[3] *See **State v. Carprue***, 2004 WI 111, ¶¶57, 59, 274 Wis. 2d 656, 683 N.W.2d 31 (defendant's argument that there was fundamental unfairness in the circuit court's conduct of a trial due to judicial bias "could not be [forfeit]ed" because this would be a structural error).

serious risk of actual bias[ ]based on objective and reasonable perceptions.'" ***Id.***, ¶24 (quoting ***Caperton v. A.T. Massey Coal Co.***, 556 U.S. 868, 884 (2009). Pertinent here, this can be shown when "objective facts demonstrate that a judge treated a party unfairly." ***Goodson***, 320 Wis. 2d 166, ¶9. "Merely showing that there was an appearance of partiality or that the circumstances might lead one to speculate that the judge was partial is not sufficient." ***State v. McBride***, 187 Wis. 2d 409, 416, 523 N.W.2d 106 (Ct. App. 1994); *see also* ***State v. Pirtle***, 2011 WI App 89, ¶34, 334 Wis. 2d 211, 799 N.W.2d 492 (mere "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish "bias or partiality"). Whether Klinker has met his burden to establish objective judicial bias is an issue of law. *See* ***Miller***, 392 Wis. 2d 49, ¶15.

¶38 Klinker argues that the circuit court was objectively biased because, according to him, the court: (1) unfairly deprived Klinker of his right to put on a case in his own defense prior to issuing the injunction; (2) expressed the belief that if a person has neither been charged with or convicted of a drug offense, the person cannot be a drug user, dealer, or associated with users or dealers; and (3) was determined not to credit any evidence that Klinker could have produced to support his legitimate-purpose defense, including the text messages Klinker sought to introduce and the proffered evidence about drug testing. We address each of Klinker's arguments in turn, explaining for each our conclusion that Klinker has not successfully refuted the presumption of the court's impartiality.

¶39 As noted above in discussing harmless error, the circuit court in fact provided Klinker with the opportunity to assert his sole defense of having a legitimate purpose, even if the court eventually cut him off. This included giving his counsel the opportunity to submit an offer of proof and asking if the parties had any additional arguments to make.

¶40      Klinker misinterprets the circuit court's remarks to suggest that the court expressed the view that if a person has not been charged or convicted of a drug offense, the person could not have engaged in illegal drug use or dealing. Instead, the court emphasized that, typically, individuals would be required to perform regular drug tests only if they were charged or convicted of drug offenses. Further, Klinker failed to provide admissible evidence (as opposed to mere hearsay and innuendo) that could even begin to support a finding that Hicks was an illegal drug user or associated with illegal drug users, apart from the concerning but inconclusive representation about the child's test results.   And in the meanwhile, Hicks had provided two clean drug test results.   Under the circumstances, Klinker fails to show that the court's decision not to make a finding that Hicks had issues related to substance use was the result of bias.

¶41      More generally, and as it relates to Klinker's third bias argument, circuit courts are not required to credit any evidence the litigants attempt to admit; instead, courts have broad discretion to control the presentation of evidence and the conduct of hearings. *See State v. Smith*, 2002 WI App 118, ¶14, 254 Wis. 2d 654, 648 N.W.2d 15 (under WIS. STAT. § 906.11(1), the trial court generally controls "the conduct of trial, including … the admission or exclusion of exhibits"). The court here had the discretion to give little weight to the evidence introduced by Klinker and, as noted, Klinker does not argue that the circuit court erred by excluding the contents of the text messages that Klinker claimed he received from out-of-court declarants.

¶42      As for the proffered drug test evidence specifically, the circuit court reasonably found it unhelpful because it did not establish how, even assuming accurate testing, the child had been exposed to drugs.  It is true the court had an unfortunate way of expressing this reasonable underlying point—when explaining

the reasons for questioning the significance of the proffered evidence, the circuit court commented that Klinker "could be the one setting up the child in this way." This could be interpreted as a completely unsupported allegation that Klinker had exposed the child to drugs, and if interpreted that way could have been "counterproductive to the goals" of the hearing by introducing an unnecessarily inflammatory accusation. *See* ***State v. Throndson***, No. 2020AP1081-CR, unpublished slip op. ¶31 (WI App July 15, 2021). At the same time, however, another interpretation would be that the court intended only to emphasize the limitations of the proffered evidence in proving drug-related allegations involving Hicks. We cannot conclude that the reasoning of the court on this issue was inaccurate or inappropriate, even if the idea could have been expressed in a more productive manner.

## CONCLUSION

¶43 For all of these reasons, we affirm the challenged order of the circuit court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.